John Robert HOWARD, a/k/a John Barry, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20366.

United States Court of Appeals
Fifth Circuit.

May 13, 1964.

Harvey J. St. Jean, Miami Beach, Fla., for appellant.

Donald E. Stone, Asst. U. S. Atty., Edward A. Kaufman, Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr.,

U. S. Atty., S. D. of Florida, for appellee.

Before MAGRUDER,* JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

The counts of the indictment upon which the appellant, John Robert Howard, was convicted, charged that he passed and uttered falsely made, forged and altered obligations and securities of the United States, and that he concealed and kept such securities in his possession. The securities were United States Savings Bonds, Series E. The appellant filed, and the Court granted, a motion for a bill of particulars showing the manner in which the bonds were falsely uttered or forged. The Government, responding to the order, stated that the bonds "were falsely uttered or forged by the name 'John Barry' written on the reverse side of the savings bonds."

The case was tried before the court without a jury. It was admitted by stipulation or established by evidence that a group of U. S. Savings bonds, Series E, all of $50.00 denomination, which were being shipped from Washington, D. C. to Germany, were found to be missing at Idlewild Airport in New York City. At the time of consignment no payee was named in these bonds. On February 13, 1962, the appellant cashed forty-five of said missing bonds, fifteen at each of three banks in Miami, Florida. On February 15, 1962, the appellant again cashed more of the missing bonds at five separate banks in Miami and Coral Gables, Florida, turning in twenty-five at four banks and forty at the other. On February 16, 1952, the appellant visited six separate banks located in Miami, South Miami and Perrine, Florida, and cashed between twenty-five and forty bonds at each of these banks. On February 19, 1962, the appellant cashed fifty bonds at the American National Bank of North Miami, and forty bonds at the Bank of Hallandale.

At the time the aforementioned bonds were turned in for cash, the name "John Barry", address "222 East 46th Street, New York 17, New York," had been typed in as the person to whom payable. On the reverse side, the bonds were endorsed in the name of "John Barry", as the owner requesting payment, address "Jefferson, Miami Beach, Florida."

In at least three of the aforementioned banks, the appellant endorsed these bonds as "John Barry" in the presence of bank personnel; and, in all of these banks, he offered various types of identification for the purpose of showing himself to be John Barry, including a driver's license, Social Security card, birth certificate, Miami Beach Police Department identification card with the appellant's picture thereon, all of which identification was in the name of John Barry, and all of which proved to be fictitious and not having been issued by any proper authority. A handwriting expert testified that the signature "John Barry" on the reverse side of these bonds had been written by the appellant.

The appellant went to the Dania Bank, Dania, Florida, and presented some of the bonds for cashing. The employee of the bank to whom they were presented became suspicious and took the appellant to the office of W. S. Parker, a Vice President of the Bank. After waiting a few minutes, the appellant left, saying that he had a golf date and would be back later. Upon Mr. Parker's instructions, the bank guard followed the appellant as he left the bank taking the bonds with him. The appellant entered a bar, stayed there over ten minutes, and then proceeded to a golf course. The bank guard and a Dania policeman observed the appellant running across the rear of the golf course and followed him. When they called to him to stop, he came to them and they then determined that he had no bonds or identification papers on his person. The appellant was returned to the Dania Bank, where he was identified and then taken to the

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

police station in Dania. At the police station, the appellant signed the fingerprint card and his meal receipt with the name "John Barry."

The appellant testified that he had been twice convicted of crimes within the past ten years, that he had left California following a disagreement with his wife and had come to Florida about a month prior to February 13, 1962. He had first stopped at various clubs at Palm Beach, Florida, and then went down to Miami Beach, Florida, where he stayed with different people and played a good deal of tennis at the Yacht and Tennis Club. His testimony was that he had come to Florida on his way to Puerto Rico to see a family friend who might help him achieve a reconciliation with his wife.

It was the appellant's testimony that on or about the 10th or 11th of February, 1962, he met a person by the name of John Barry at Miami Beach, who told him that he was having marital troubles and that he wanted to cash these bonds so that his wife would not be able to attach the money, or know that he had them. The appellant testified that he was upset over his own marital difficulties and had been doing a lot of drinking at the time. He further testified that they went out drinking together several times to different hotels and other places. The appellant described Barry as being similar to him in height and weight. He did not know where this man was staying, although he had met him at least six times between the 10th and 19th of February. The man would call him, so he testified, at the Yacht and Tennis Club where he was playing tennis and they would make arrangements to meet. The man would pick him up in his car and drive him to the various banks where the cashing of the bonds took place. The appellant said that he received identification papers from this person for these purposes. He testified that after he would receive the cash from the bank, he would then give the money to the other man; and, for this service,

the appellant testified that he had received $200.00, and that he was to receive an additional $500.00. The appellant had opened a bank account in the name of John Barry at the Pan American Bank. The signature card, which was signed by the appellant, lists the occupation of John Barry as Host at Harry's American Bar.

The appellant testified that while he was in the bar after leaving the Dania Bank, Barry ran in and said, "Give me the bonds. Give me the identification, somebody is following you. Meet me at the golf course." He had not, so he said, seen Barry since.

In his testimony the appellant, looking back, could see that he should have been suspicious and asked Barry a lot more questions. Although admitting it was not logical, and was hard to explain, he would have it inferred that he believed the Barry story that if Barry cashed the bonds his wife would somehow be told of it and get the bonds or their proceeds from him, and he resorted to the same justification for cashing the bonds at different banks and in comparatively small amounts.

The bonds, introduced in evidence, bore a dating stamp impression of the Drydock Savings Bank of New York, N. Y. as the issuing agent. The Government, as a part of its case, called as a witness a Vice President of the Drydock Bank who testified that the stamp was not genuine and that the bonds had never been in the possession of his bank. The appellant moved for a mistrial on the ground that the testimony was a surprise and had not been anticipated, and that the Government should be confined in its proof to the falsity or forgery of the name of John Barry on the reverse side of the bonds. The court denied the motion.

The appellant made a motion for acquittal when the Government rested and again at the close of all the evidence. The motions were denied. The court found the appellant guilty, and, in announcing the finding, said,

"I want to say in this case that I think he was telling the truth that he was drinking and that he got mixed up with this fellow. For some reason he persuaded him into doing this job. But I think the circumstances are too strong for me to permit myself to say that he didn't know that these bonds were bad."

■■ The sole question tendered by the appeal is whether the evidence was such as to permit a finding that guilt was established beyond a reasonable doubt. The appellant concedes, as of course he must, that the bonds were falsely made, forged and altered, and that they were possessed and uttered by him. His primary contention is that the evidence falls short of the necessary proof of guilty knowledge that the "bonds were bad." It cannot be said that there is no substantial evidence upon which a finding of guilt could be based. The evidence, although circumstantial, was such as to furnish abundant justification for the inference drawn by the court as the trier of the facts. This being so, the finding is not to be disturbed on appeal. Knapp v. United States, 5th Cir. 1962, 311 F.2d 71, reh. den. 316 F.2d 794; Roberts v. United States, 5th Cir. 1945, 151 F.2d 664. The judgment of conviction will be affirmed.

■ The court's sentence was imposed under 18 U.S.C.A. § 4208(b) on February 8, 1963. Notice of Appeal was filed on February 18, 1963. On April 30, 1963, the district court, pursuant to Section 4208(b) reduced the sentence to five years, to run from the date of the original sentence. On May 15, 1963, the district court entered an order reciting that because of the pending appeal it was without jurisdiction to enter its order of April 30, 1963, and rescinding such order. On May 27, 1963, the district court admitted the appellant to bail pending appeal and the appeal bond was approved on May 27, 1963. These post-conviction proceedings were had prior to the decision on December 9, 1963, of the Supreme Court in Corey v. United States, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229. From the opinion in that case it appears that the taking of an appeal does not prevent the modification of a sentence. We therefore remand the cause to the district court for such further proceedings under Section 4208(b) as may be appropriate.